Good afternoon, everyone. Welcome. The first case on the docket is 524-1268, People v. Nicholas Walker. This case may not last for a moment. I will be presenting argument on Ms. Nicholas Walker's behalf. There is only one issue before the court today. That is whether counsel was ineffective for felon to file a motion to suppress the evidence of the incident. The state argues three points in its response brief. All three are meritless and one is a distraction. First, the distraction. The state argues that there are good policy reasons for inventory searches. There are good policy reasons for inventory searches such as protecting an owner's property and protecting the police against claims of lost or stolen property. However, an inventory search can only be conducted when the initial impoundment is legal. So whether there are good policy reasons for inventory searches and whether those policy reasons might be present here is simply a question we don't get to in this case because the initial impoundment was illegal. So it's simply irrelevant and it's a distraction and a red herring. Next, the state argues it was trial strategy to not move for suppression. However, we know this wasn't trial strategy when we look at the record and when we look at the law. The record shows us that counsel expressed surprise and perhaps disbelief regarding the police departments for towing vehicles. And that's at page 177 of 78 in the transcripts. Counsel said it was news to him that the police could tow a vehicle any time there was a Class C misdemeanor offense. Then counsel recognized the damage of the inventory search in the trial court, stating that had it not been for this police department rule allowing for the towing, Ms. Walker wouldn't be convicted. This tells us that counsel recognized how damaging the inventory search was. And it tells us that had he done his research, he would have been aware that he should have moved to suppress. Sound trial strategy requires the use of established rules and procedure to exclude evidence that is damaging to one's client. Where counsel had means to move for suppression and failed to do so, this is not trial strategy and is not entitled to any deference. Finally, the state relies entirely on NASH to argue that where a police department has a policy to impound vehicles, then a subsequent inventory search is therefore lawful. This is not the law even when we look to NASH. In NASH, on page 348, the court is clear three criteria must be met for a valid warrantless inventory search of a vehicle. Number one, the original impoundment of the vehicle must be lawful. It is only at steps two and three that the court discusses inventory searches, stating that number two, the purpose of the inventory search must be to protect the owner's property, to protect police from the claims about stolen or vandalized goods. And number three, the inventory search must be conducted in good faith, pursuant to reasonable standardized police procedures. However, we don't even get to steps two and three, even when we look to NASH, without getting past step one, which is the original impoundment must be lawful. So why wasn't it lawful here? Because there were no grounds to impound the vehicle. No grounds for the stop? There were grounds for the stop. However, the vehicle could be lawfully moved by Ms. Nash. She could have had it towed on her own. And I believe Officer Wunderlich even admits that, but for this police department policy, she could have towed the vehicle to her house. But isn't that what NASH says? If you admit that they were validly stopped and there are these policies, in fact, don't we have to have policies? No, Your Honor. So NASH, the court says that the vehicle there was not towed pursuant to police department policy. The towing, the impoundment was mandated by the Illinois Vehicle Code. So in NASH, the defendant... But generally, isn't the law that you have to have a policy or somebody has, the tow has to be in accordance with standardized police policies and procedures? That's true, Your Honor. The tow, the inventory search has to be in accordance with standardized police department procedures. However, before we can even get to that step two about the search, we have to first look at step one, which is the seizure. And the seizure of the vehicle, the impoundment, was unlawful. But wasn't the impoundment subsequent to an arrest? I'm sorry, Your Honor? Wasn't the impoundment subsequent to an arrest? It was, Your Honor. However, Ms. Nash could have had the vehicle towed. So one, there was nothing indicating that the vehicle had to be towed because it was obstructing traffic or anything of that sort. And two, Ms. Nash could have had the vehicle towed personally to her own residence. How do we know that? Who gets to decide if it's a danger on the roadway? I mean, isn't that an issue for the officers at the time? Well, the state failed to present any evidence below justifying the Fourth Amendment violation that occurred here. There were no grounds to seize the vehicle under the Fourth Amendment. So in NASH, the defendant was... Isn't the inventory towing the same as the Fourth Amendment seizure? So the inventory tow, so we have the impoundment of the vehicle where the vehicle is seized. And then subsequent to that, we have the inventory search. So the vehicle seizure itself was a violation of the Fourth Amendment. And then the search that followed was also a violation of the Fourth Amendment because officers had no grounds to seize the vehicle in the first place. In NASH... But as Justice Strohler says, isn't that a police officer decision for people on the scene as to whether we're going to let Ms. Nash... Sorry, Ms. Walker. Ms. Walker. No, she... Ms. Walker was arrested. Correct. So whether we let somebody else drive it home, that's a decision that's made on the scene by police officers. That's why we require policies and procedures for the tow. So, Your Honor, the violation here that Ms. Walker was stopped for was a Class C misdemeanor violation of the Illinois Vehicle Code. Because of that, it wasn't a violation of the Illinois Criminal Code or any of the Illinois Vehicle Codes that allow for impoundment. So the officer has to have a reason. He has to have some sort of law that allows him to seize the vehicle. It cannot just be police department procedure that's been created to circumvent Fourth Amendment principles. What is he to do when he arrests someone? I mean, it's an issue for the law enforcement to just leave the vehicle on the side of the road. What does he have to do? Well, NASH actually talks about that, Your Honor. They talk about how officers, if a vehicle is impeding traffic, officers can have the arrestee move the vehicle off to the side of the road. They talk about how, I believe NASH also talks about how they can have it personally towed. So there has to be some sort of law that allows police to seize this vehicle. The police can't just make a department policy that allows them to take property, which circumvents the Fourth Amendment. So in NASH, the defendant was driving without a license and had no proof of insurance, and she was arrested. But additionally, most importantly, distinguishing NASH from this case, the appellate court in NASH said the Illinois Vehicle Code mandates impoundment of her vehicle. So regardless of any policy procedures or any police department policies, in NASH, the Illinois Vehicle Code required that the vehicle be impounded. And that's why NASH is completely different from this case. There's no law that justifies impounding of a vehicle. In this case, the state has provided no statute, no ordinance to the Illinois Vehicle Code, Illinois Criminal Code. It simply does not exist. There were no grounds to impound a vehicle when it... Did the state argue the city of Murfreesboro ordinance? No, Your Honor. We provided that in the opening brief to demonstrate that there are no violations that allow for, or that this was not a violation that allows for impoundment. And when we look at NASH, they talk about DeGuy, a federal case, that they note it's persuasive. And the court distinguishes DeGuy from NASH specifically on these grounds, noting that in DeGuy, all they had was a police department procedure, whereas in NASH, they had statutory law that allowed and provided for the impoundment of the vehicle. Here, there is no Illinois Vehicle Code or criminal code that authorized police to take this car. They did not have legal authority to do so. So that initial impoundment was illegal, and so was the subsequent inventory search. That search can't be legal where the initial seizure of the vehicle was not. I have a question for you, if you don't mind. Yes, Your Honor. You're not saying, or are you saying, that the police can only seize and tow a vehicle if it is specifically authorized by Illinois statute or city ordinance? That's correct, Your Honor. And in this case, the city ordinance didn't cover this circumstance? That's correct. The city ordinance is nor the Illinois Vehicle Code, nor the Illinois criminal code. There's no grounds on that. My question is, can the police have a policy that is not expressly stated in the city ordinances that would still be valid? They cannot. And NASH goes directly to this point. I will try to find that for Your Honor for rebuttal. But NASH talks about police officers cannot, or also perhaps the Spencer case cited in the opening brief, that talks about police procedure, or police department policies cannot be used to circumvent Fourth Amendment principles. Does Your Honor have any additional questions? No, thank you. Thank you. Okay, you'll have an opportunity for rebuttal in this lesson. Thank you. Okay, Mr. Hattie, Mr. Jameson. Yes, ma'am, Your Honor. Okay, Mr. Apley. Chief Justice Chalmers, and may it please the Court. My name is Louis Hizzard, and I represent the Apley on the matter. This Court should affirm the defendant's convictions for unlawful possession of controlled substance and possession of drug paraphernalia and reject the defendant's claims of ineffective assistance of counsel. In addressing the defendant's claim, I would first like to note that because this is a claim of ineffective assistance of counsel, as this Court is well aware, the Strickland standard applies. And in this specific context, regarding counsel's alleged failure to follow motion to suppress, the defendant must show that the motion would have been granted, and then the outcome would have been different, and that the evidence suppressed would have been suppressed. That's cited under People v. Brickhouse, well cited within our brief, and generally, you know, as stated, management trial strategies will not support claims of ineffective assistance of counsel. So with these principles in mind, the defendant asserts that their motion to suppress would have been granted because the officers had no legal authority to impound the vehicle, and therefore no legal authority then to follow up with the search that resulted in it. So what do you say to her position that the tow related to the arrest was not lawful and that it was a violation of court order? With respects to that, Your Honor, we would fall back on People v. Parton in Nash, cited within our brief, that recognizes that an inventory search pursuant to a lawful impound is not only an exception to the warrant requirement, but as long as there's a reasonableness that constitutionally meets the Fourth Amendment requirements, that tow will be found to be viable. So it was a lawful impound, is what you're saying? It's our position that it was a reasonable tow in this matter, Your Honor, and therefore it meets case law requirements. But Ms. Lassie seems to be making a big distinguishing part between the arrest and the validity of the tow. Correct, Your Honor. It's my understanding that the defendant only has issues with the actual towing and then, per se, the search that followed. So how do you get the validity of the tow? The seizure has to be, and as the defendant also recognizes in their brief, it has to follow standardized policy or procedures, and it has to be reasonable under the Fourth Amendment. So given those two requirements and the facts that were presented here, it's our position that the impound was absolutely reasonable in that the department here, the police officer, Officer Wunderlich, was following department procedures and then acted upon what was happening on the scene. So as the record reflects, Officer Wunderlich conducted the traffic stop of that Toyota sedan pursuant to the improper license plate registration. So that's important because, as we all are well aware, the defendant's not challenging the validity of the stop. But what follows next is that Officer Wunderlich then identifies the defendant as the driver and notices that there's no sticker on the license. He conducts a VIN check and realizes that the vehicle is coming back to ownership to a different individual, and the defendant is then arrested. So what's important to recognize here is Officer Wunderlich's testimony, not only that he acted upon the Murfreesboro Police Department's procedures, but also regarding his belief that the license plate was purposely placed on the vehicle based off of his interrogations with the defendant. So he suspected malfeasance here. And it was at this point that he decided to follow the standard procedure from the department, place the defendant under arrest, and conduct the tow. He testified, Officer Wunderlich testified, that he believed that the defendant never attempted to even obtain a license plate on the car for over a year, that he was in possession of the vehicle, and that's found on the record on page 99. And based off of this testimony, we believe that this is important because, as we've highlighted in our brief, given the nature and the circumstances of the arrest and the suspected purposeful use of the incorrect plates, officers then acted accordingly and proceeded cautiously by not only arresting the defendant but then impounding a vehicle that did not have the proper registration on it as opposed to leaving it in the slip. What about this idea that somebody else could have driven the car away? So our response to that, Your Honor, is, again, given the circumstances, the vehicle was not legally operable at that time. Without the license plate registrations, the officers couldn't have told the defendant, okay, call someone else and then have them drive the vehicle off somewhere else. Instead, the defendant wishes this court to then require officers in this situation to leave a vehicle parked on the side of the road that has incorrect plates during a situation where the officer is already suspecting malfeasance. And we rely on the principles established under Nash for the general propositions that, here, the officer did act reasonable, given that he acted pursuant to the standard department procedures and that his testimony supporting his interactions with the defendant played an important factor in the analysis. And we rely on Nash because the appellate court there also deemed the seizure of the vehicle subsequent to the search reasonable, given the circumstances that were presented. Officers here acted cautiously in impounding the vehicle that had the wrong plates on it, and the defendant does not argue that he was treated any differently than anybody else would have been, given the circumstances. There is a factual distinction that I would note in Nash, that a portion of the court's analysis there did consider Section 6303E of the Vehicle Code requiring officers to impound vehicles any time that they arrest someone for driving without a valid license or no insurance. However, I believe this case law is nonetheless instructive, as the analysis does provide the authority, the general authority, in analysis considering a similar argument that was presented before the appellate court there. And similarly there, the defendant did argue about these general possibilities of what could have occurred if the officer acted differently. And ultimately, as Nash highlights, the defendant bears that burden of establishing that his motion would have been granted. And that principle is reiterated consistently under Nash. And the record here does not support any of the defendant's suggested possibilities of what the officer could have done differently, and that alone prevents the defendant from meeting their burden of establishing ineffective. I would also like to note, with respect to the possibilities, that Nash does have a portion of their conclusion that talks about their refrain from making a requirement for officers to, essentially, requiring officers to call someone else to move the vehicle. A portion of that analysis does go into whether or not that is a viable requirement to make officers, and the court in Nash refused to make that mandate. I would also like to briefly respond to the defendant's reply brief, in which they assert that the Murfreesboro City Ordinance does not authorize the impoundment when an individual is arrested for improper use of registration. As we maintain in our brief, the Murfreesboro Ordinance is irrelevant here. The officers obviously did not act in accordance to those ordinances. But their reliance is misplaced because the ordinance does not state a complete, exhaustive list of situations in which impoundments are allowed. And reading the appendix that was provided for the record here, it shows that what they're citing to, the actual ordinance reads, that any motor vehicle operated with the expense, express or implied permission of the owner, of record, or interested person that is in connection with the following violations, as now or maybe hereafter amended, shall be subjected to seizure and impoundment by the city, and the owner record of said motor vehicle will then be liable. It is our position that the officer didn't act according to this because it's irrelevant, for one, and it's a list of when towing would be required, meaning the officer would have no discretion there. Both the procedure from the Department and the City Ordinance can be read in tandem, Your Honor. For those reasons, we would ask this Court to find that the defendant has not met their burden in establishing that their motion would have been granted at the trial court level, and therefore, counsel provided effective assistance, and we would ask this Court to affirm their conviction. Thank you. Your Honors, first I would like to respond to the State's argument that because the police had this policy, everyone was treated the same. However, that the police department has a policy that violates everyone's Fourth Amendment rights uniformly is not a meritorious argument. Next, on page three of the opening brief, we quoted People v. Spencer, a First District case from 2011, to state the existence of a police regulation cannot be used as a predicate to determine the lawfulness or reasonableness of an inventory search of a vehicle. To hold otherwise would grant the police an unlimited ability to evade the requirements of the Fourth Amendment by promulgating regulations that authorize the use of inventory searches following every arrest. And that's People v. Spencer on page three of the opening brief. I would also like to direct this Court to People v. Nash. In that case, again, the defendant was arrested, and there was an Illinois vehicle code that the State cited. The State has not provided any vehicle code, criminal code, Murphysboro ordinance here to justify the impoundment. But in Nash, there was a code that required impoundment. And in Nash, the Court distinguished Nash's case from DeBry explaining, surmising that the purported policy required towing any time the arrestee is carted off to jail, regardless of whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard. The Second Circuit determined that the impoundment was unreasonable. But help me understand, how do you move a car with bad plates and a bad sticker? I mean, what is the police department left to do? Ms. Welker could have had the vehicle towed personally to her home. She could have paid for a tow. She wasn't given that option because police determined they were taking that vehicle based on a policy that they created, a policy that circumvented Fourth Amendment principles. So I think Nash is clear when we look to it. They distinguished DeBry where all they had in that case was a police procedure, like in this case here. And that's the difference. Nash is not on all four corners with this case because they had a statutory law that allowed for impoundment of the vehicle. Here, there were no grounds to impound, which is why Nash sets that DeBry case apart and says, well, the impoundment of Nash's vehicle was reasonable. Police had no choice. It was a legal impoundment, a legal seizure. We simply do not have that here. And I would ask your honors to consider Spencer when considering this case and that the police cannot create their own police department policies to circumvent the protections of the Fourth Amendment. You have agreed that having improper registration is in itself a criminal activity. So it was a Class C misdemeanor violation of the Illinois Vehicle Code, but it still didn't authorize impoundment. Even though it was improper registration? That's correct, your honors. So the vehicle was legally registered to Ms. Walker's father. It's just that it had the wrong plates on it. So it was legally registered to be on the road, according to this record, and I believe there's also evidence that it was properly insured. It just had the wrong plates on it for whatever reason we do not know, although the state seems to be suggesting some nefarious purpose or malfeasance. We don't have that in this record. And again, officers can't simply impound a vehicle based on a hunch. They had to have some sort of legal authority to impound it. And because they didn't, the question of whether the inventory search honored policies or any of that, we just don't get to that point because the initial seizure was illegal. Did your honors have any additional questions? Yes. Clarification, while you're just saying that, it occurred to me, it is a criminal violation to operate with improper plates too, isn't it? It is a Class C misdemeanor offense, but it's codified under the Illinois Vehicle Code. Class C, so when they said she was charged with Class C, that's the basis for the charge? Correct, your honor. Is it a requirement that they have a, how should I say this, I think in the brief there was a mention that the city ordinance also allowed for the seizure and towing of the vehicle if the vehicle was alleged to have been involved in the commission of any felony or misdemeanor in violation of Illinois statutes, right? So that's partially correct, your honor. The appendix that we attach shows that the Murfreesboro Code allows for impoundment if it's a misdemeanor or felony of certain violations of the criminal code of conduct, but not the Illinois Vehicle Code. So it still wouldn't be permissible to tow it under these circumstances. So in your opinion, the circumstances of this stop would not give rise to the police believing this could have been involved in a felony or a qualifying misdemeanor offense? That's correct, your honor, because the stop only resulted in the improper use of registration, and it was only once the search was conducted that the criminal charges could be filed. The fact that it was registered to someone other than her isn't sufficient in your opinion to say this? That's correct, your honor. Just because it was registered to Ms. Walker's father does not justify the impoundment of the vehicle. I think at the time the only reason they had to believe that was because she identified that person as her father, right? He or she. That's true, although I believe they share the same last name. All right, thank you. Thank you, your honors. Thank you both for your arguments here today. This matter will be taken under advisement when the issue is over in due course. Appreciate it.